# Law Offices of Colin Mulholland

Employment and Civil Litigation

36-36 33rd Street
Suite 308
Astoria, NY 11106

Telephone: (347) 687-2019
cmulhollandesq@gmail.com

November 20, 2026

**VIA ECF**
Attn: Hon. Arun Subramanian, U.S.D.J.
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 15A
New York, NY 10007-1312

Re: Falcon, et al. v. York Bagels Inc. d/b/a Bagels & Co., et al.
Case No.: 1:25-cv-6759 (AS) (SN)

**Dear Judge Subramanian**:

This office represents Plaintiffs Juan Falcon (hereinafter "Falcon") and Maurilio Aburto (hereinafter "Aburto") (collectively hereinafter "Plaintiffs") in the above-referenced case. Plaintiffs write jointly with Defendants York Bagels Inc. d/b/a Bagels & Co., Amsterdam Ave Bagels Inc., Vladislav Djouraev, Yuval Aroety (hereinafter "Aroety"), and Yuri Ishakov (collectively hereinafter "Defendants"), pursuant to this Court's August 4, 2026 Order (ECF Docket Entry 28), to respectfully request that this Court approve the parties' settlement as a fair and reasonable resolution of a bona fide dispute under, *inter alia*, the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and the New York Labor Law ("NYLL").

The parties' Settlement Agreement and Release of Claims (hereinafter the "Agreement") is annexed hereto as **Exhibit A.** The parties therefore ask this Court to approve the settlement pursuant to Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199, 206 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 824 (2016).

The parties submit that, while Plaintiffs maintain that they could recover more if they prevailed on all of their claims at trial, and Defendants maintain that Plaintiffs would recover

substantially less, if anything, the settlement is a fair and reasonable compromise of disputed claims, as discussed below.

Defendants deny all of Plaintiffs' allegations, and the Agreement expressly provides that it is not an admission of liability or wrongdoing by any Defendant. See **Exhibit A** ¶ 4.

The Agreement was reached after a mediation session conducted through this Court's Mediation Program, at which the parties reached agreement on all issues (ECF Docket Entry 27), and after months of further arm's-length negotiation between experienced counsel, who exchanged several drafts of the written Agreement (ECF Docket Entry 37).

**Background**

Plaintiffs allege that Defendants employed them at Bagels & Co. as cooks, dishwashers, delivery persons, and general laborers, Falcon from approximately November 20, 2023 through March 4, 2024, and Aburto from approximately October 14, 2023 through February 26, 2024.

Plaintiffs allege to have worked the following hours:

From November 20, 2023 until March 4, 2024, Falcon alleges that he worked six (6) days every week as follows:

a. Monday: 10:00 A.M. until 8:00 P.M.

b. Tuesday: 10:00 A.M. until 8:00 P.M.

c. Wednesday: 10:00 A.M. until 8:00 P.M.

d. Thursday: 10:00 A.M. until 8:00 P.M.

e. Friday: 10:00 A.M. until 8:00 P.M.

f. Saturday: Typical Day Off.

g. Sunday: 10:00 A.M. until 8:00 P.M.

From October 14, 2023 until February 26, 2024, Aburto alleges that he worked six (6) days every week as follows:

h. Monday: 7:00 A.M. until 5:00 P.M.

i. Tuesday: 7:00 A.M. until 5:00 P.M.

j. Wednesday: 7:00 A.M. until 5:00 P.M.

k. Thursday: 7:00 A.M. until 5:00 P.M.

l. Friday: 7:00 A.M. until 5:00 P.M.

m. Saturday: Typical Day Off.

n. Sunday: 7:00 A.M. until 5:00 P.M.

Plaintiffs further allege that Defendants paid each of them a fixed weekly salary of $500.00, with no premium for overtime, throughout their respective employment.

Plaintiffs also allege that they did not receive the wage notices and wage statements required by NYLL §§ 195(1) and 195(3).

Defendants dispute the hours Plaintiffs claim to have worked and the pay Plaintiffs claim to be owed. From the outset of this case, Defendants have maintained that Plaintiffs were properly paid all wages and did not work the number of hours they claim to have worked. (ECF Docket Entry 23 at 1).

Defendants deny that Plaintiffs worked the number of hours they now claim to have worked based on, among other things, the store's hours of operation; other records Defendants have; and any days or weeks that Plaintiffs did not work.

Plaintiffs also faced legal risks independent of the dispute over their hours. Even crediting Plaintiffs' allegations, a weekly salary of $500.00 for sixty (60) hours of work yields an average of $8.33 per hour, which exceeds the federal minimum wage of $7.25 per hour, so that

Plaintiffs' minimum wage claim could proceed only under the NYLL. See 29 U.S.C. § 206(a)(1)(C); Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106, 115-16 (2d Cir. 2013). In addition, Plaintiffs' claims for statutory damages under NYLL § 195, which account for $20,000.00 of Plaintiffs' own damages calculations, are subject to dismissal for lack of standing unless Plaintiffs prove a concrete, downstream injury caused by the missing notices and statements. See Guthrie v. Rainbow Fencing Inc., 113 F.4th 300, 302 (2d Cir. 2024).

The potential range of recovery for Plaintiffs depends ultimately on the hours worked, the terms of their employment, and the manner in which to calculate damages that may or may not be endorsed by a trier of fact after trial, or by this Court if it is determined that the manner in which damages are to be calculated is a matter of law.

Plaintiffs calculate that, if a trier of fact credited their recollection of a sixty (60) hour week in every week of their employment, they could recover up to $67,409.66, consisting of $19,890.00 in unpaid minimum wages and overtime, $1,581.00 in unpaid spread of hours pay, $21,471.00 in liquidated damages, $20,000.00 in statutory damages under NYLL § 195, and $4,467.66 in prejudgment interest. See **Exhibit B**. Defendants dispute these calculations in their entirety.

Plaintiffs are fully aware that their claims could be worth more, or less, than the settlement. After carefully weighing the options going forward and the risks of protracted litigation with their counsel, Plaintiffs have chosen to accept $24,000.00 to resolve their claims.

**Scope of the Release:**

The Agreement contains no confidentiality provision and no non-disparagement provision. Plaintiffs release Defendants and their related parties "solely in connection with Plaintiffs' employment and the matters resolved here" from wage and hour claims under the

FLSA and the NYLL arising out of Plaintiffs' employment, including claims for unpaid wages, overtime, wage notices and statements, retaliation, liquidated damages, and interest, together with other claims that could have been brought through the date of execution, "to the fullest extent permitted by applicable law and approved by the Court." See **Exhibit A** ¶ 3. The release does not reach claims that arise after execution, claims that cannot be waived as a matter of law, or Plaintiffs' rights to communicate with, or participate in proceedings before, any government agency. See id. Plaintiffs do not release Aroety, who will be dismissed without prejudice, subject to a covenant not to sue that becomes permanent only upon full payment. See id. ¶¶ 3, 5, 6 and Exhibit B-1 thereto. Defendants, in turn, release Plaintiffs from claims arising from the transactions and occurrences implicated by the pleadings in this case. See id. ¶ 3.

To the extent the release reaches beyond wage and hour claims, it is mutual, and Plaintiffs no longer work for Defendants. Courts routinely find agreements with such provisions fair and reasonable pursuant to Cheeks. See, e.g., Grullon v. Justin Pharmacy Inc., No. 1:20-CIV.-6122 (OTW), 2021 WL 76386, at *3 (S.D.N.Y. Jan. 8, 2021) (when the plaintiff is a former employee with no ongoing relationship with the employer, courts in this District have approved a general release, if the release is mutual) (*citing* Strauss v. Little Fish Corp., No. 1:19-CIV.-10158 (LJL), 2020 WL 4041511, at *5-6 (S.D.N.Y. July 17, 2020) ("Such a broad mutual general release operates as a walk away provision: it permits each side to terminate their relationship entirely free from fear that the other will re-engage in the form of a lawsuit.") (citing cases)); see also Small v. Stellar Mgmt. Ltd., No. 1:20-CIV.-2540 (SDA), 2020 WL 7890748, at *1 (S.D.N.Y. Oct. 21, 2020) ("In the present case, the Court finds that mutual general releases are acceptable because Plaintiff no longer works for Defendant; Plaintiff was represented by experienced counsel; and the release, although it extends to individual and entities other than

Defendants, does so only to the extent that such persons or entities are acting on behalf of or in privity with Defendants and to claims arising from their activities as such"); Souffrant v. 14-15 Mertens Place Corp., No. 19-CIV.-05482 (BCM), 2020 WL 1166231, at *3 (S.D.N.Y. Mar. 11, 2020) (approving agreement when modified to ensure releases extended only to those acting on behalf of or in privity with the parties and was limited to claims arising from actions taken in such capacities); Khan v. Young Adult Inst., Inc., No. 18-CIV.-2824 (HBP), 2018 WL 6250658, at *2 (S.D.N.Y. Nov. 29, 2018) ("General releases are permissible in FLSA settlements where plaintiff is no longer employed by defendants, the releases were negotiated by competent counsel for both sides and the releases are mutual."); Lola v. Skadden, Arps, Meagher, Slate & Flom LLP, No. 13-CIV.-5008 (RJS), 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016) ("[T]here is nothing inherently unfair about a release of claims in an FLSA settlement"). As such, the parties respectfully submit that the release is fair and reasonable, because the releases apply to both Plaintiffs and Defendants. See also Souza v. 65 St. Marks Bistro, No. 15-CV-327 (JLC), 2015 WL 7271747, at *5 n.8 (S.D.N.Y. Nov. 6, 2015) ("A mutual release will also ensure that an employer is not simply leveraging 'a release from liability unconnected to the FLSA,' but that any claim that the employer might have against the plaintiff (such as theft or destruction of property, in the case of a restaurant worker) would also be released.").

## Settlement

The parties have agreed to settle this case for the gross sum of $24,000.00 (the "Settlement Amount"), inclusive of attorneys' fees and costs, payable in ten (10) monthly installments, the first of which is due thirty (30) days after this Court approves the Agreement. See **Exhibit A** ¶ 1. The installments are secured by confessions of judgment, which Plaintiffs'

counsel holds in escrow and may not submit for entry unless a payment default remains uncured after written notice and a twenty (20) day opportunity to cure. See id. ¶ 2(b).

The total costs of this case are $928.47.

Plaintiffs will receive $15,381.02 from the Settlement Amount, net of attorneys' fees and costs: $6,866.94 to Falcon and $8,514.08 to Aburto, allocated in proportion to each Plaintiff's calculated unpaid minimum wages and overtime. See **Exhibit A** ¶ 1; **Exhibit B**.

The settlement represents a significant sum of money for Plaintiffs and reflects a fair compromise of their respective best-case scenarios in light of the risks of proceeding to trial.

The remaining $8,618.98 will be applied to attorneys' fees and costs, subject to this Court's review and approval.

**This Court Should Approve the Settlement as Fair and Reasonable**

In deciding whether to approve an FLSA settlement, courts ask whether the agreement "reflects a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." Le v. SITA Info. Networking Computing USA, Inc., 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008). Courts consider the totality of circumstances, including "(1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (*quoting* Medley v. Am. Cancer Soc., No. 10-cv-3214 (BSJ), 2010 WL 3000028, at *1 (S.D.N.Y. July 23, 2010)). Each factor supports approval here.

First, the settlement falls well within Plaintiffs' range of possible recovery. Plaintiffs' net recovery of $15,381.02 represents approximately seventy-seven percent (77%) of the $19,890.00 in unpaid minimum wages and overtime that Plaintiffs themselves calculate, and the gross Settlement Amount exceeds the $21,471.00 in unpaid wages, overtime, and spread of hours pay that Plaintiffs claim. See **Exhibit B**. The balance of Plaintiffs' calculation consists of liquidated damages, statutory damages that face the standing challenge described above, and interest.

Second, the settlement enables the parties to avoid the burden and expense of document discovery, depositions of both Plaintiffs and the individual Defendants, and a jury trial (ECF Docket Entry 26 ¶ 2), in a case involving two (2) Plaintiffs whose alleged employment lasted fewer than five (5) months each.

Third, both sides faced serious litigation risks. Plaintiffs' claims depend on their recollection of their hours, which Defendants dispute, and Plaintiffs' federal minimum wage and NYLL § 195 claims face the legal obstacles described above. Defendants, for their part, face the cost and uncertainty of trial. Further, the installment schedule, secured by confessions of judgment, gives Plaintiffs a certain recovery now, rather than the delay and the daunting aspect of collecting on any judgment after trial.

Fourth, the Agreement is the product of arm's-length bargaining between experienced counsel. The parties reached agreement through this Court's Mediation Program and then negotiated the terms of the written Agreement over several months. (ECF Docket Entries 27 and 37).

Fifth, there is no possibility of fraud or collusion. The Agreement contains no confidentiality provision, the release is tailored as described above, and Plaintiffs' counsel's fee is one-third of the settlement net of costs, consistent with Plaintiffs' retainer agreements.

The agreement here is fair to Plaintiffs. Plaintiffs have been represented by experienced counsel throughout this case, and they have made an informed decision to settle at this stage of litigation without the risk of a contrary finding of fact at trial on either their hours worked or the terms of their employment. There is no question that the settlement did not come about because of "overreaching" by Defendants.

Moreover, courts recognize that settling a claim sooner rather than later is often valuable in its own right. See Reyes v. Buddha-Bar NYC, No. 08 Civ. 2494, 2009 WL 5841177, at *3 (S.D.N.Y. May 28, 2009) (approving FLSA settlement and discussing how "the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation").

**Attorneys' Fees Are Fair and Reasonable**

Plaintiffs' counsel submits the following in support of the attorneys' fees and costs allocated under the Agreement, including Plaintiffs' counsel's request for a multiplier. Defendants take no position on the reasonableness of the fees, the hourly rate, or the multiplier, none of which affects the Settlement Amount that Defendants will pay.

Under the Agreement, Plaintiffs' counsel will receive $8,618.98 from the Settlement Amount as attorneys' fees and costs, subject to review and approval of this Court. This represents one-third of the recovery net of costs, plus costs, in keeping with Plaintiffs' agreements with counsel. Plaintiffs' counsel has submitted contemporaneous billing records along with this application evidencing counsel's lodestar. See **Exhibit C**.

With respect to fees, a court may calculate a reasonable attorneys' fee either by determining the so-called 'lodestar' amount or by awarding a percentage of the settlement. **See** McDaniel v. Cty. of Schenectady, 595 F.3d 411, 417 (2d Cir. 2010).

"However, 'the trend in this Circuit is toward the percentage method,' although it is for district court to determine 'the appropriate method' in a particular case […] the percentage method […] avoids the lodestar method's potential to create a disincentive to early settlement." See Hyun v. Ippudo USA Holdings, No. 14-cv-8706 (AJN), 2016 U.S. Dist. LEXIS 39115 (S.D.N.Y. Mar. 24, 2016) (internal citations omitted).

Courts in this district generally find 33.3% of a settlement allocated for attorneys' fees to be reasonable when negotiated as part of a one-third contingency fee arrangement. **See** Garcia v. Pancho Villa's of Huntington Village, Inc., No. 09 CV 486, 2012 WL 5305694, at *8 (E.D.N.Y. Oct. 4, 2012).

"[C]ourts in this Circuit have routinely found an award representing one third of the settlement amount to be reasonable." Oxley v. Excellent Home Care Servs., LLC, No. 18-cv-2374 (RJD) (CLP) (E.D.N.Y. Jan. 8, 2020) (approving one-third of the fund in FLSA case).

"[A] one-third contingency fee is a commonly accepted fee in this Circuit." Calle v. Elite Specialty Coatings, Inc., No. 12 CV 6126, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 19, 2014); Rangel v. 639 Grand St. Meat & Produce Corp., No. 13 CV 3234, 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) ("This fee arrangement [of one third of the settlement amount plus costs] is routinely approved by courts in this Circuit."); Rodriguez-Hernandez v. K Bread Co. Inc., No. 15 CV 6848, 2017 WL 2266874, at *7 (finding "30% of the total settlement [to be] a reasonable and appropriate attorney's fee award").

Plaintiffs' counsel has such an arrangement with each Plaintiff for a 33.3% contingency fee net of costs, and a retainer agreement is considered "documentation to support" the 33.3% fee in this case. See generally Miller v. United Parcel Serv., Inc., No. 20-cv-5244 (JMW), 2023 WL 2214107, at *4 (E.D.N.Y. Feb. 24, 2023) ("Following Fisher, courts in this district have

independently found an attorney fee representing one-third the settlement amount reasonable, where the attorney provided documentation of the signed retainer agreement between the attorney and plaintiff.”).

“We will not compare the one-third contingency payment to the actual hours expended by counsel — commonly called a “lodestar cross check” — to determine the reasonableness of the fee as many courts do. See, e.g., Huggins v. Chestnut Holdings Inc., 2022 WL 44748, at *3 (S.D.N.Y. Jan. 5, 2022). We decline to perform a “lodestar cross check” because it would have no bearing on our assessment of the reasonableness of the fee sought if it turned out that the “lodestar” for counsel’s hours (that is, a reasonable hourly rate multiplied by the reasonable number of hours expended) is far less than the one-third contingency payment. A “lodestar cross check” is of course appropriate, and indeed required, where a court is being asked to award a percentage of a common fund in attorney’s fees. See, e.g., Fujiwara v. Sushi Yasuda Ltd., 58 F. Supp. 3d 424, 438 (S.D.N.Y. 2014). Here, however, there is no common fund created by the settlement. Instead, the plaintiff and the attorney agreed in advance that the attorney would be entitled to one-third of the settlement as attorney’s fees. The very purpose of a contractual contingency fee arrangement is to ensure recovery for an attorney regardless of the number of hours actually expended by the attorney. In other words, attorneys who take on FLSA cases on contingency bear the risk of having to litigate cases in which the recovery may not adequately compensate them for the time expended. See generally King v. Fox, 2004 WL 68397, at *5 (S.D.N.Y. Jan. 14, 2004) (“Contingency fees account for the risk taken in representing a client.”). Therefore, in cases where attorneys spend fewer hours than would be expected to match the amount in the contingency arrangement, it is only proper that they be permitted to collect their contracted fee given the risk they have assumed. “[A] contingency fee arrangement

provides an incentive to counsel to take on cases that are less than sure winners." Blizzard v. Astrue, 496 F. Supp. 2d 320, 325 (S.D.N.Y. 2007). Finding such contingency fee arrangements not "reasonable" under Cheeks whenever the attorneys achieve a significant benefit from the contingency arrangement will only serve to diminish the pool of attorneys willing to accept the risks in FLSA cases. This runs counter to one of the purposes of the FLSA — to provide an avenue for workers deprived of their just wages to seek redress in the courts — and is therefore rejected.

Instead, we must independently judge whether the percentage contingency arrangement is itself "reasonable." We believe such an analysis, however, must be conducted ex ante --- not in light of the actual number of hours expended after the contingency fee arrangement was made. Certainly, we would not find "reasonable" any contingency fee arrangement that was itself the product of fraud, deception, or overreaching. See generally Wells v. Sullivan, 907 F.2d 367, 369 (2d Cir. 1990) (contingency fee arrangement will not be enforced where there has been "fraud or overreaching"); In re Lawrence, 24 N.Y.3d 320, 339, 998 N.Y.S.2d 698, 23 N.E.3d 965 (N.Y. 2014) (contingency fee arrangement enforced in the absence of "incompetence, deception or overreaching" or if "void at the time of the inception"). It is certainly possible that a contingency fee arrangement in a particular case might be ex ante unreasonable — for example, where an employer had already offered to pay an employee full or substantial damages and the client hired the attorney merely to effectuate the settlement. Here, however, there is no indication of any such overreaching or of any deceptive conduct.

As to the amount of the contingent payment, we would have no compunction about disapproving a percentage amount that was outside of the range of what FLSA practitioners demand in the marketplace, even if the retainer agreement was not otherwise void or

questionable. If the arrangement provided a payment in excess of that range, disapproving such a contingency would do nothing to diminish the market of available attorneys to take on FLSA cases. It is settled, however, that "one-third of the total award is the customary contingency percentage in FLSA cases." Garcia v. Atlantico Bakery Corp., 2016 WL 3636659, at *1 (S.D.N.Y. June 29, 2016).

Thus, regardless of the number of hours actually spent by counsel on this case, the Court finds that the contingent fee arrangement was fair to plaintiffs and reasonable at the time it was made. Accordingly, the Court approves the attorney's fees and costs in the settlement agreement as they are consistent with the retainer agreement agreed to by plaintiff." Almanzar v. Silver Star Properties Corp., No. 23 CIV. 819 (GWG), 2023 WL 6979460, at *2-3 (S.D.N.Y. Oct. 24, 2023).

To the extent this Court engages in a cross-check based on the lodestar, Plaintiffs' counsel respectfully requests a multiplier.

"Assuming the multiplier here is somewhat higher than normally awarded, this Court nonetheless recognizes the importance of **encouraging the swift resolution of cases** like this one and **avoiding 'creat[ing] a disincentive to early settlement'**—particularly where such settlement has provided Plaintiff with a **substantial and speedy result**." Pinzon v. Jony Food Corp., No. 18-cv-105 (RA) (S.D.N.Y. May 24, 2018) (approving a multiplier of 5.23 in a single plaintiff FLSA case involving Plaintiffs' counsel); see also Johnson v. Brennan, No. 10-CV-4712 (CM), 2011 WL 4357376, at *20 (S.D.N.Y. Sept. 16, 2011) ("Courts regularly award lodestar multipliers from two to six times lodestar."); Shapiro v. JPMorgan Chase & Co., No. 11-CV-7961 (CM), 2014 WL 1224666, at *24 (S.D.N.Y. Mar. 24, 2014) ("Lodestar multipliers of nearly 5 have been deemed 'common' by courts in this District.").

"Courts regularly award multipliers from two to six times the lodestar." Monserrate v. Tequipment, Inc., No. 11-cv-6090 (RML) (E.D.N.Y. Nov. 16, 2012) (collecting cases and applying a multiplier of 4.34).

"When applying the lodestar method, courts generally 'apply a multiplier to take into account the contingent nature of the fee, the risks of non-payment, the quality of representation, and the results achieved.'" Pucciarelli v. Lakeview Cars, Inc. (E.D.N.Y. 2017) (quoting In re Platinum & Palladium Commodities Litig., No. 10-CV-3617 (CCH), 2015 WL 4560206, at *3 (S.D.N.Y. July 7, 2015)).

Moreover, in Fisher v. SD Prot. Inc., 948 F.3d 593, 602 (2d Cir. 2020), the Second Circuit held that the proportionality of an attorney fee award to the plaintiff's recovery may not be used as an "outcome determinative factor in evaluating the reasonableness" of the fee, and further emphasized the importance of incentivizing the plaintiffs' bar to take small or difficult cases.

Plaintiffs' counsel respectfully requests that this Court consider a multiplier that takes these factors into account.

Reasonableness of Rates:

"Additionally, in an individual FLSA action (as opposed to a collective or class action) in which the parties settle the fee through negotiation, the 'range of reasonableness' for attorneys' fees is greater than in a collective or class action." Dominguez v. Architectural Sign Grp., Inc., No. 18-cv-5514 (KAM) (JO) (E.D.N.Y. Oct. 17, 2019).

The highest rate approved for Plaintiffs' counsel is $375.00 per hour, which was explicitly approved by the Honorable Richard J. Sullivan in 2018. See Calle v. NDG Coffee

Shop, Inc., No. 16-cv-7702 (S.D.N.Y. 2018). Plaintiffs' counsel now respectfully submits a lodestar calculation applying that same rate to this case. See **Exhibit C.**

This rate was also explicitly approved by Chief Magistrate Judge Cheryl L. Pollak in 2022:

"Based on the Court's knowledge of the rates generally charged for this type of work in connection with an FLSA default, the Court finds that the rate of $375 per hour for a sole practitioner of Mr. Mulholland's experience is within the range of billing rates of similarly experienced attorneys working on comparable matters in the Eastern District. See, e.g., Sajvin v. Singh Farm Corp., No. 17 CV 4032, 2018 WL 4214335, at *9 (E.D.N.Y. Aug. 13, 2018) (awarding $500 per hour to partner in FLSA case, though noting that "$450 has been the upper limit in this District since at least 2013"); Gutman v. Klein, No. 03 CV 1570, 2009 U.S. Dist. LEXIS 123057, 2009 WL 3296072, at *2 (E.D.N.Y. Oct. 13, 2009) (stating that rates between $300 and $400 for partners are within the reasonable range in the Eastern District of New York)." Cruz v. O & M Pizza Corp., 2022 U.S. Dist. LEXIS 148240, *29-30, 2022 WL 3448661; see also Flores v. Urciuoli, 2022 U.S. Dist. LEXIS 5637, *20, 2022 WL 987353.

In support of the above hourly rate, Plaintiffs' counsel also respectfully submits the following brief biography:

Plaintiffs' counsel is a solo practitioner who focuses on FLSA and employment claims in New York City. He was admitted to practice in February 2013. Before managing his own practice, he litigated dozens upon dozens of FLSA claims and employment claims throughout his career. He has been lead counsel on over forty (40) cases in the Eastern District and over one hundred (100) cases in the Southern District, almost all of them FLSA cases that resulted in favorable settlements for his clients.

Plaintiffs' counsel has successfully tried four (4) FLSA cases as sole trial counsel in the Southern District. Each of those trials resulted in a significant finding of liability in favor of the plaintiffs. These trials included two (2) jury verdicts in favor of plaintiffs:

i. Calle v. NDG Coffee Shop, Inc. yielded a jury verdict of over $2.2 million before the Honorable Richard J. Sullivan.

ii. Carrasco Flores v. NYC Pasta and Risotto Co. LLC yielded a verdict of over $195,000.00 before the Honorable Lorna G. Schofield.

Plaintiffs' counsel spent 9.6 hours litigating this case. See **Exhibit C**. The total costs amount to $928.47. Plaintiffs' counsel asks this Court to take judicial notice of the $405.00 filing fee connected with opening this case. The invoices for the remaining costs are annexed to **Exhibit C** for service of process which was effected prior to Defendants ultimately consenting to waivers of service.

Whether the proposed attorneys' fees exceed the lodestar depends on the hourly rate this Court endorses for Plaintiffs' counsel; however, the percentage method provides a powerful incentive to attorneys for plaintiffs in contingency fee FLSA cases to obtain the highest possible settlement amount for their clients and to avoid unnecessary litigation. See Hyun, 2016 U.S. Dist. LEXIS 39115, at *7 ("[T]he Court finds that the percentage method, which avoids the lodestar method's potential to 'create a disincentive to early settlement,' is appropriate") (quoting McDaniel v. Cty. of Schenectady, 595 F.3d 411, 418 (2d Cir. 2010)).

Here, Plaintiffs obtained a favorable outcome against experienced defense counsel, and the fees requested are in accordance with Plaintiffs' retainer agreements with counsel.

For the foregoing reasons, the parties respectfully request that this Court: (i) approve the Agreement as a fair and reasonable resolution of a bona fide dispute under the FLSA; (ii)

approve the allocation of attorneys' fees and costs; (iii) so-order the parties' stipulations dismissing all claims against York Bagels Inc. d/b/a Bagels & Co., Amsterdam Ave Bagels Inc., Vladislav Djouraev, and Yuri Ishakov with prejudice, and all claims against Aroety without prejudice, in the forms annexed to the Agreement as Exhibits B-2 and B-1; and (iv) retain jurisdiction solely to enforce the Agreement and to determine whether judgment may be entered, including upon the confessions of judgment. See **Exhibit A** ¶¶ 2(a), 5.

The parties thank this honorable Court for its time and attention to this case.

Respectfully submitted,

LAW OFFICES OF COLIN MULHOLLAND
/s/ Colin Mulholland, Esq.
Colin Mulholland, Esq.
36-36 33rd Street, Suite 308
Astoria, NY 11106
(347) 687-2019
cmulhollandesq@gmail.com
*Attorneys for Plaintiffs*

SAGE LEGAL LLC
*/s/ Emanuel Kataev, Esq.*
Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421 (office)
(917) 807-7819 (cellular)
(718) 489-4155 (facsimile)
emanuel@sagelegal.nyc
*Attorneys for Defendants*